IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| JAMES KEITH WARD, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 5:24-cv-00153-BP |
| § | |
| COMMISSIONER OF SOCIAL § | |
| SECURITY, § | |
| § | |
| Defendant. § | |

**MEMORANDUM OPINION AND ORDER**

James Keith Ward ("Ward") applied for Title II Disability Insurance Benefits ("DIB") under the Social Security Act ("SSA"). The Commissioner denied his application, deciding that he was not disabled. Ward appealed, but the Social Security Appeals Council ("AC") rejected his request for review. There is no reversible error in the legal standard that the Administrative Law Judge ("ALJ") applied, and substantial evidence supports her determination that Ward was not disabled. Accordingly, the Court **AFFIRMS** the Commissioner's decision and **DISMISSES** the case **with prejudice**.

**I.   BACKGROUND**

Ward applied for DIB on November 22, 2021. Soc. Sec. Admin. R. (hereinafter "Tr.") ECF No. 6-1 at 229-30. He alleged disability beginning on December 31, 2020, due to the combined effects of fluid in his lungs, retaining fluid in his body, difficulty breathing, minimal change disease, high blood pressure, high cholesterol, and thyroid problems. *Id*. at 266. The Commissioner denied his application initially on March 25, 2022, and upon reconsideration on November 14, 2022.  Tr. 136-37, 149-50.

Ward challenged the Commissioner's denial in a hearing before an ALJ, who affirmed the Commissioner's decision on December 22, 2023. *Id*. at 16-34. Ward appealed the decision to the AC, which denied review on May 1, 2024. *Id*. at 1-4. "[T]he Commissioner's decision does not become final until after the [AC] makes its decision denying the claimant's request for review." *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005). Ward then filed this civil action seeking judicial review of the Commissioner's decision under 42 U.S.C. §§ 405(g), 1383(c)(3). ECF No. 1.

## II.   STANDARD OF REVIEW

Title II of the SSA, 42 U.S.C. §§ 401-434, governs the disability insurance program. A person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id*. § 423(d)(1)(A). To determine whether a claimant is disabled and thus entitled to DIB, the Commissioner employs a sequential five-step evaluation process. 20 C.F.R. § 404.1520.

First, the claimant must not be presently doing any substantial gainful activity. *Id*. § 404.1520(a)(4)(i). "Substantial gainful activity" ("SGA") is work that "involves doing significant physical or mental activities" for pay or profit. *Id*. § 404.1572. Second, the claimant must have a severe impairment or combination of impairments. *Id*. § 404.1520(a)(4)(ii). Third, disability exists if the impairment or combination of impairments meets or equals an impairment in the federal regulatory list. See *id*. § 404.1520(a)(4)(iii) (referencing 20 C.F.R. pt. 404, subpt. P, app. 1). Before proceeding to steps four and five, the Commissioner assesses the claimant's residual functional capacity ("RFC") and considers his past relevant work ("PRW"). *See id*. § 404.1520(a)(4), (e)-(f). RFC means "the most [a claimant] can still do despite [his] limitations." *Id*. § 404.1545(a)(1).

Previously, PRW meant work the claimant performed "within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id*. § 404.1560(b)(1). The definition has since changed, and as of June 22, 2024, PRW means the "work that you have done within the past five years that was substantial gainful activity and that lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560(b)(2). The Commissioner and AC made their decisions regarding Ward's application prior to June 22, 2024, so the previous definition is proper in this case. *See* Tr. 136-37, 1-4.

Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to his PRW considering his RFC. *Id*. § 404.1520(a)(4)(iv). Fifth, the impairment must prevent the claimant from doing any other relevant work, considering the claimant's RFC, age, work experience, and education. *Id*. § 404.1520(a)(4)(v); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing [he] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

Judicial review is limited to determining whether the Commissioner applied correct legal standards and whether substantial evidence in the record supports the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "It is more than a mere scintilla and less than a

preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)).

"A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id*. (quoting same). The Court may neither reweigh evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Harris*, 209 F.3d at 417; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (alteration in original) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

### III. ANALYSIS

The Commissioner, acting through the ALJ, completed the five-step evaluation process in this case. Tr. 21-34. First, the ALJ found that Ward had not engaged in SGA since his alleged disability onset date of December 31, 2020. *Id*. at 21. Second, she found five severe impairments: "hypertension, chronic kidney disease, morbid obesity, lumbar degenerative disc disease, and chronic obstructive pulmonary disease (COPD)." *Id*. at 21. She also found that Ward had non-severe impairments, such as the "medically determinable mental impairment of adjustment disorder." *Id*. at 22. She determined that this impairment "does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere." *Id*.

Third, the ALJ identified no impairment or combination of impairments that qualified under the federal regulatory list. Tr. 23. The ALJ then assessed Ward's RFC, concluding:

> that [Ward] has the [RFC] to perform medium work as defined in 20 CFR 404.1567(c) except he can occasionally climb ramps or stairs. He can never climb ladders, ropes, or scaffolds. He can frequently balance, stoop, kneel, crouch, and crawl. He can have frequent

4

>> concentrated exposure to environmental irritants such as dust, odors, gases, and fumes.

Tr. 24.

At step four, the ALJ determined that Ward could perform PRW as an electrical assembler and pest control commercial as these jobs are generally performed in the national economy. *Id*. at 32. The ALJ found that both jobs were "performed within the past fifteen (15) years, were of long enough duration to allow the claimant to fully learn all duties of the job, and were performed at the level of [SGA], the [ALJ] finds that they qualify as past relevant work." *Id*.

The ALJ also made a step five finding in the alternative, explaining that "in addition to [PRW], there are other jobs that exist in significant numbers in the national economy that the claimant also can perform, considering the claimant's age, education, work experience, and [RFC]." *Id*. The ALJ explained that if Ward could perform the full range of medium work, this would lead to a finding of "not disabled." *Id*. at 33. But the ALJ then explained that even though Ward's ability to perform the full range of medium work was "impeded by additional limitations," the vocational expert had testified that there were still jobs existing in significant numbers in the national economy that Ward could perform, namely, the jobs of machine packer, laundry worker, and sweeper/cleaner. *Id*.

Ward argues that "[t]he ALJ erred by failing to properly evaluate the medical opinion evidence consistent with SSA authority and Fifth Circuit precedent." ECF No. 8 at 3. Specifically, he asserts that the ALJ "never addressed the consistency factor when evaluating the opinion of Dr. Garrett." *Id*. Ward argues that "the record is consistent with and supports the opinion of Dr. Garrett," and that "the ALJ did not find to the contrary." *Id*. at 8.

In response, the Commissioner argues that the ALJ "properly evaluated the opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1520c." ECF No. 16 at 4. The

Commissioner further asserts that "after the ALJ discussed [Ward's] subjective allegations and treatment history, she specifically stated that [Ward's] allegations are not supported by and were inconsistent with the medical evidence." *Id*. 9-10. Finally, the Commissioner states that "despite [Ward's] argument to the contrary, the ALJ properly considered whether Dr. Garrett's opinion was consistent with the medical evidence as a whole." *Id*. at 10.

    **A.**    **Substantial evidence supports the ALJ's determination of Ward's RFC.**

"Because a determination [of] whether an impairment[ ] is severe requires an assessment of the functionally limiting effects of an impairment[ ], [all] symptom-related limitations and restrictions must be considered at this step." *Martinez v. Kijakazi*, No. 3:20-cv-3282-BH, 2022 WL 4590577, at *11 (N.D. Tex. Sept. 29, 2022) (quoting Social Security Ruling 96-3P, 1996 WL 374181, at *2 (S.S.A. July 2, 1996)). Ultimately, a severity determination may not be "made without regard to the individual's ability to perform [SGA]." *Stone v. Heckler*, 752 F.2d 1099, 1104 (5th Cir. 1985).

Although a claimant's step-two burden is quite low, it remains exceedingly difficult to show that substantial evidence does not support an ALJ's opinion, in whole or in part. Evidence is substantial if it "is more than a mere scintilla," but it need not be greater than a preponderance. *Boyd*, 239 F.3d at 704. It is the bare minimum needed for "a reasonable mind [to] accept to support a conclusion." *Ripley*, 67 F.3d at 555 (quoting *Greenspan*, 38 F.3d at 236). A finding of no substantial evidence is only appropriate where a reasonable mind could not support the ALJ's conclusion based on the evidence under consideration. *See Id*.

Substantial evidence did not support the ALJ's RFC determination in *Ripley*, thus warranting remand, because the record "d[id] not clearly establish…the effect [the claimant's] condition had on his ability to work." *Id*. at 557. The ALJ found Ripley not disabled because he

could perform sedentary work. *Id*. Even though the record included "a vast amount of medical evidence," including "reports discussing the extent of Ripley's injuries," no reports from "qualified medical experts" showed how Ripley's condition affected his ability to perform sedentary work. *Id*. at 557 & n.27.

After *Ripley*, the Court found that reversible error lies where the "record does not clearly establish" how an applicant's condition affects his ability to work. *Bowles v. Comm'r of Soc. Sec.*, No. 7:20-cv-00112-O-BP, 2021 WL 7451148, at *3 (N.D. Tex. Oct. 19, 2021), *rec. adopted*, 2022 WL 768546 (N.D. Tex. Mar. 14, 2022); *Fitzpatrick v. Colvin*, No. 3:15-cv-3202-D, 2016 WL 1258477, at *7-8 (N.D. Tex. Mar. 31, 2016); *Thornhill v. Colvin*, No. 3:14-cv-335-M, 2015 WL 232844, at *10 (N.D. Tex. Dec. 15, 2014), *rec. adopted*, 2015 WL 232844 (N.D. Tex. Jan. 16, 2015).

Ward asserts that his treating provider, James Garrett, M.D., found that he was "limited to lifting/carrying 25 pounds; sitting and standing/walking less than 2 hours each during an 8-hour workday," and that his legs should be elevated twelve inches with prolonged sitting, "he would be off task 20% of the time; required unscheduled breaks during the workday; and would likely be absent from work greater than 3 days per month." ECF No. 8 at 6; *See also* Tr. 651-51. Ward argues that "Dr. Garrett's opinion patently describes greater limitations than the ALJ's RFC." *Id*. Ward asserts that the ALJ's analysis of Dr. Garrett's opinion was "defective." *Id*. at 10.

However, the record reflects that the analyzed Dr. Garrett's opinions in depth and adequately explained why she found them to be unpersuasive. Regarding Dr. Garrett's April 2021 opinion that Ward could not work until his follow-up appointments with nephrology and pulmonary specialists, the ALJ found that "[t]his opinion … Garrett offers no function-by-function analysis on the impact of [Ward's] impairments on his ability to perform basic work activities"

7

and thus was not persuasive. Tr. 30. In July 2021, Dr. Garrett expressed concerns about Ward going back to work in a hot environment, and the ALJ found that the opinion was unpersuasive because it did not concern "[Ward's] ability to do other work generally; therefore this is not an opinion about functional ability." *Id*. at 30-31.

Finally, in January 2023 Dr. Garrett performed a "Physical Medical Inquiry on behalf of [Ward]" that to determine Ward's work capabilities. *Id*. The ALJ considered this finding, but also the fact that two days before this inquiry, "[Ward] presented to Dr. Garrett's office and had a form to complete to give to his disability advisor." *Id*. The ALJ found that "Dr. Garrett apparently relied quite heavily on the subjective report of symptoms and limitations provided by [Ward,] and seemed to uncritically accept as true most, if not all, of what [Ward] reported." *Id*. Ultimately the ALJ found this opinion to be unpersuasive because "[Ward's] physical examination is relatively normal and does not support the limitations assessed by Dr. Garrett." Tr. 31.

Contrary to Ward's assertion, the ALJ's opinion directly addresses the lack of consistency between Dr. Garrett's opinions and his physical examination of Ward, thus leading to his findings. *Id*. Further, Ward asserts that consistency requires consideration of whether the opinion is consistent with "the entire record." ECF No. 17 at 2. However, throughout the ALJ's report she references many factors that led to her conclusion that Dr. Garrett's opinions were not consistent with the record as a whole and that Ward is not disabled. The ALJ dedicated seven pages of her opinion to an analysis of the entire record, including Ward's testimony at the hearing, his previous treatment and examinations from health care professionals, his reported daily activities, medical opinions, and prior administrative medical findings. Tr. 24-31.

The Fifth Circuit has held that "ALJs are no longer required to give controlling weight to a treating physician's opinion…" *Webster v. Kijakazi*, 19 F.4th 715, 719-720 (5th Cir. 2021). To

that end, the ALJ here properly exercised her responsibility as fact finder to weigh the evidence and incorporate limitations in her RFC assessment that the record supported. *Audler,* 501 F.3d at 447. Accordingly, she did not commit reversible error on this point.

        **B.**        **The ALJ properly considered Dr. Garrett's opinion.**

Ward asserts that the ALJ's criticisms of Dr. Garrett generally are defective and not sufficient to support her conclusion that he was not disabled. ECF No. 8 at 10. However, an ALJ is free to reject any medical opinion when the evidence supports a contrary conclusion. *Qualls* v. *Astrue*, 339 F. App'x 461, 466 (5th Cir. 2009) (quoting *Bradley* v. *Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)); *see also Harris*, 209 F.3d at 417. An ALJ may even completely disregard the opinion of a treating physician under certain circumstances. *See Brown*, 192 F.3d at 500.

Regardless of whether an ALJ accepts or rejects a medical opinion, she must "articulate in [her] determination or decision how persuasive [she] find[s] all of the medical opinions . . . in [a claimant's] case record." 20 C.F.R. § 404.1520c(b); *see also Guy v. Comm'r of Soc. Sec.*, No. 4:20-cv-01122-O-BP, 2022 WL 1008039, at *3 (N.D. Tex. Mar. 14, 2022), *rec. adopted* 2022 WL 1004241 (N.D. Tex. Apr. 4, 2022). The articulation requirement is to "allow a subsequent reviewer or reviewing court to trace the path of an [ALJ]'s reasoning." 82 Fed. Reg. 5858 (Jan. 18, 2017). This requirement is obligatory for claims filed on or after March 27, 2017. *Id.* Ward applied for DIB on November 22, 2021, and is, therefore, entitled to the explanation. Tr. 229-30.

While ALJs need not exhaustively recount their reasoning, they must "explain how [they] considered the supportability and consistency factors for . . . medical opinions . . . in [a claimant's] determination or decision." 20 C.F.R. § 404.1520c(b)(2). Mere evidentiary summaries fall short of § 404.1520c's requirements, as evidenced in the plain meaning of the regulatory text. *Id.* ALJs

9

consider five factors when evaluating medical opinions, and they must explain how they considered the two "most important factors," supportability and consistency. *Id*.

Determining supportability and consistency "involve different analyses and require the ALJ to explain [her] reasoning for [her] persuasiveness finding with respect to each factor." *Linda M. v. Comm'r, Soc. Sec. Admin.*, No. 3:21-cv-210-BK, 2022 WL 4125095, at *3 (N.D. Tex. Sept. 8, 2022) (quoting *Kilby v. Kijakazi*, No. 4:20-cv-03035, 2022 WL 1797043, at *3 (S.D. Tex. Mar. 15, 2022)). While "supportability" measures the degree of relatedness between a medical provider's opinion and the medical evidence she provides to support that opinion, "consistency" is "an all-encompassing inquiry" that focuses on "how well a medical source is supported, or not supported, by the entire record." *Id.* (emphasis removed); *See* 20 C.F.R. §§ 404.1520c(c)(1), (2).

The ALJ here evaluated Dr. Garrett's opinion at step four. Tr. 24-31. As discussed previously, the ALJ stated many reasons why Dr. Garrett's opinion was unpersuasive and discussed the entire record in weighing this opinion. Because "[c]onflicts in the evidence are for the Commissioner and not the courts to resolve," the Court cannot second guess the ALJ's determination of the weight to be afforded Dr. Garrett's opinion compared to the rest of the evidentiary record. *See Brown*, 192 F.3d at 496. Considering the clarity of the ALJ's explanation and the degree to which she supported her conclusion with references to specific evidence in the record, substantial evidence supports the Commissioner's conclusion, and reversal is not required on this point.

## IV.   CONCLUSION

Because the ALJ applied the proper legal standards and substantial evidence supports the ALJ's decision, the Court **AFFIRMS** the Commissioner's decision and **DISMISSES** this case **with prejudice**.

It is so **ORDERED** on February 18, 2025.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE